UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADRIANA WALSH, *on behalf of herself and all others similarly situated*,
Plaintiff,

-v-

UNITED STATES DEPARTMENT OF EDUCATION,
Defendant.

26-CV-1358 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Adriana Walsh brings this putative class action against the United States Department of Education (the "DOE"), asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and the Privacy Act, 5 U.S.C. § 552a, *et seq.* (*See generally* ECF No. 32.) Before the Court is the DOE's motion to dismiss the amended complaint. (*See* ECF No. 33.) For the reasons that follow, that motion is granted.

## I. Background

The DOE is a federal agency tasked with overseeing various federal student loan programs. (*See* ECF No. 32 ("AC") ¶¶ 2, 37-38, 58.) The DOE contracts with third-party loan servicers to administer its federal student loan programs. (*Id.* ¶¶ 4-5, 65.) Pursuant to those contracts, the third-party loan servicers send credit data about borrowers to consumer reporting agencies ("CRAs"). (*Id.* ¶¶ 2, 7, 70, 78-79, 98, 104.) In turn, CRAs communicate this credit information to creditors, such as banks and other financial institutions. (*Id.* ¶ 129.)

Walsh obtained federal student loans to finance her education. (*See id.* ¶ 97.) At the time of her graduation, Nelnet was her designated student loan servicer. (*Id.*) Thereafter, the DOE transferred Walsh's loan servicing from Nelnet to another loan servicer, the Missouri Higher Education Loan Authority ("MOHELA"). (*Id.* ¶ 100.) Accordingly, Walsh's Nelnet account

was terminated, and MOHELA opened a new account to service her outstanding student loans which, at the time, totaled approximately $150,000. (*Id.* ¶¶ 102-103.) This change in Walsh's designated loan servicer should not have affected the amount of Walsh's remaining loans. (*Id.* ¶ 103.)

However, following her transfer to MOHELA, Walsh's credit data erroneously represented that she had two active student loan accounts—one with Nelnet and one with MOHELA—each of which contained an outstanding balance of $150,000. (*Id.* ¶¶ 105-107.) This mistaken duplication in Walsh's student debt was then reported to CRAs such as Experian, Equifax, and TransUnion. (*Id.* ¶ 108.) The CRAs subsequently communicated this duplication to Walsh's "creditors and potential creditors," including Citibank, OneMain, Credit One Bank, Discovery Financial, and TD Bank. (*Id.* ¶ 130.) Walsh alleges that the erroneous "credit report communications to third parties caused reputational harm to [her] due to Defendant's inaccurate and harmful credit reporting," as well as "emotional humiliation and embarrassment," and "wasted time and money in futile dispute efforts." (*Id.* ¶¶ 131-138.)

Walsh alleges that the erroneous credit reporting related to her student loans arose from a change in protocol that the DOE implemented with respect to loan servicer transfers. (*Id.* ¶¶ 16, 108, 110, 116, 122.) Specifically, Walsh claims that under an earlier DOE regime, the industry-standard practice was to reduce the balance of the borrower's account with the original loan servicer to zero prior to reporting that zeroed account (alongside the newly created account) to CRAs. (*Id.* ¶ 12.) But from September 2021 until approximately May 2024, the DOE instructed loan servicers to use a different transition protocol, in which the new loan servicer reports a short instruction to the CRA that changes the identification number associated with a given borrower without zeroing out the account associated with the original loan servicer. (*Id.* ¶¶ 13-14.)

Additionally, Walsh faults the DOE for failing to rectify the mistaken information after she filed several disputes with CRAs such as Experian. (*Id.* ¶ 112.) In particular, Walsh alleges that "Experian provided notice of Plaintiff's disputes to Defendant directly and/or indirectly through its agents," yet "Defendant, directly and/or indirectly through its agents, repeatedly failed to correct or reduce the duplicative balance to $0." (*Id.* ¶¶ 113, 114.) In short, according to Walsh, the DOE "failed to make any reasonable efforts to assure that the information contained in its student loan records"—and passed on to CRAs and creditors—"was accurate, complete, timely, and relevant." (*Id.* ¶ 117.)

Walsh filed her original complaint on February 18, 2026. (ECF No. 1.) The DOE filed its motion to dismiss the original complaint on May 18, 2026. (ECF No. 19.[1]) Walsh then amended her complaint on August 13, 2026. (AC.) On September 18, 2026, the DOE filed its motion to dismiss the amended complaint for lack of standing and for failure to state a claim under the FCRA and the Privacy Act (ECF No. 33), accompanied by a supporting declaration (ECF No. 34) and a memorandum of law (ECF No. 35 ("Mem.")). On October 19, 2026, Walsh filed her opposition to the DOE's motion. (ECF No. 36 ("Opp.").) On November 9, 2026, the DOE filed its reply in further support of its motion to dismiss. (ECF No. 39 ("Reply").)

## II. Legal Standards

### A. Rule 12(b)(1): Standing

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional

[1] The Court denies the motion to dismiss the original complaint (ECF No. 19) as moot in light of the filing of the amended complaint and the DOE's subsequent motion to dismiss the amended complaint. *See, e.g.*, *Markovic v. Milos Hy, Inc.*, No. 22-CV-1412, 2023 WL 4763807, at *14 n.8 (S.D.N.Y. July 26, 2023).

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss for lack of standing, a plaintiff "must show (i) that he suffered an injury in fact . . . ; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And to establish an injury in fact, "a plaintiff must show that he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo*, 578 U.S. at 340-41).

The plaintiff bears the burden of establishing his standing by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113. "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.* Indeed, where "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quotation marks omitted).

**B. Rule 12(b)(6): Failure to State a Claim**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not sufficiently state a claim to survive a motion to dismiss. *Id.* The Court must accept as true all well-pleaded factual allegations, "drawing all reasonable inferences in favor of the plaintiff," *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), but the Court need not "accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. Discussion

The DOE moves to dismiss the amended complaint on the following grounds: (1) Walsh lacks standing because she fails to demonstrate a concrete injury in fact; (2) Walsh lacks standing because she fails to demonstrate that any concrete injury she suffered is fairly traceable to the DOE; (3) Walsh fails to state a claim under the FCRA; and (4) Walsh fails to state a claim under the Privacy Act. (*See generally* Mem.) The Court begins—and ends—its analysis with injury in fact.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Accordingly, even when Congress creates a right of action for a particular kind of harm, the Court must "independently decide whether a plaintiff has suffered a *concrete* harm under Article III" by analyzing "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417, 426 (emphasis added). As relevant here, in *TransUnion*, the Supreme Court held that the distribution of credit reports that mischaracterized "class members as potential terrorists, drug traffickers, or serious criminals" bore a sufficiently "close relationship" to "the reputational harm associated with the tort of defamation" so as to render those class members' injuries concrete. *Id.* at 432-33 (quotation marks omitted). In so holding, the Court explained that, "[u]nder longstanding American law, a person is injured when a

defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party." *Id.* at 432 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 13, (1990)).

Walsh argues that *TransUnion* mandates the same result here, as she "has alleged the type of third-party dissemination described in *TransUnion*." (Opp. at 15.) The Court disagrees. "*TransUnion* does not dictate that a credit reporting agency's dissemination of *any* inaccurate information to third parties constitutes a concrete injury sufficient to establish Article III standing." *Phipps v. Experian Info. Sols., LLC*, No. 23-7529, 2024 WL 5001842, at *2 (2d Cir. Dec. 6, 2024) (summary order); *see also Spokeo*, 578 U.S. at 342 ("[N]ot all inaccuracies cause harm or present any material risk of harm."). Rather, mischaracterizations in credit files that rank lower in the hierarchy of flagrancy "do not, without more, work any concrete harm by virtue of their dissemination alone" because they do not typically subject the victim of the mischaracterization "to hatred, contempt, or ridicule" upon dissemination. *Phipps*, 2024 WL 5001842, at *2 (quotation marks omitted); *see also Rosenberg v. LoanDepot, Inc.*, No. 21-CV-8719, 2023 WL 1866871, at *4 (S.D.N.Y. Feb. 9, 2023) ("The criminality aspect of the information disseminated was material to the finding of reputational harm as a basis for standing in *TransUnion*. That type of allegation is simply absent here. There is no comparable allegation of reputational harm here where, via soft pulls, existing creditors of Plaintiff's were merely able to see her Credit Report.").

Here, the patently lower degree of objectionability in distributing false information about Walsh's outstanding debts (rather than mislabeling her as a criminal or terrorist) untethers her injury from the traditional tort of defamation. As a result, she cannot, without more, rely on it to plead the kind of concrete injury that Article III requires. *See Konig v. TransUnion, LLC*, No. 18-CV-7299, 2023 WL 3002396, at *10 (S.D.N.Y. Apr. 19, 2023) (finding no concrete injury

based on dissemination of credit reports reporting old bank accounts because "this type of information does not rise to the level of subjecting Plaintiff to potential hatred, contempt or ridicule" (cleaned up)). Specifically, with respect to the kind of financial inaccuracies that Walsh alleges here, a plaintiff must allege "a risk that someone (a creditor, in all likelihood) might access the record *and act upon it*" to the plaintiff's detriment. *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) (emphasis added). Where that risk is "not alleged to have materialized," and thus no real "reputational harm" occurs, the alleged injury becomes "a nebulous risk of future harm" that "cannot [] form the basis of Article III standing." *Id.*

Walsh makes no specific allegations as to any such downstream consequences of DOE's suggestion that she owed more on her student loans than she actually did. The amended complaint does not, for example, "reveal [any] specific instances in which [Experian's] credit reporting resulted in a denial of credit." *Desmarattes v. Equifax*, No. 22-CV-3330, 2023 WL 8473362, at *10 (E.D.N.Y. Dec. 7, 2023). Nor does the amended complaint claim that Walsh suffered something along the lines of "higher interest rates and difficulty obtaining a mortgage." *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-2266, 2022 WL 564048, at *5 (S.D.N.Y. Feb. 23, 2022) (cleaned up). And while Walsh claims that she "suffered emotional humiliation and embarrassment as a result of Defendant's inaccurate credit reporting" (AC ¶ 137), her threadbare invocation of "emotional distress" is too "vague and conclusory" to confer standing. *Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857, 2024 WL 1308705, at *5 (E.D.N.Y. Mar. 27, 2024); *see also Rosenberg*, 2023 WL 1866871, at *5 ("The conclusory allegations here, such as the mere invocation of the words 'emotional pain,' are insufficient to establish concrete harm without any additional detail.")

Finally, Walsh argues that the amended complaint satisfies Article III's injury-in-fact requirement because it alleges "that she lost time *and money* sending repeated disputes to the CRAs in vain in order to try to stop the inaccurate credit reporting" allegedly caused by the DOE. (Opp. at 18.) "But where—as here—the related injury does not itself support standing, the alleged wasted time cannot alone meet the requirements of Article III," as "to allow otherwise would enable litigants to 'manufacture standing merely by inflicting harm on themselves.'" *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 144 (E.D.N.Y. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)); *see also Jiang v. JP Morgan Chase Bank, N.A.*, No. 25-CV-2434, 2026 WL 1708305, at *4 n.4 (S.D.N.Y. June 12, 2026) ("[T]o show injury in fact, the wasted time and resources must be in 'respon[se] to something that is itself a concrete harm.'" (quoting *Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1355 (11th Cir. 2025))).

Ultimately, the amended complaint is bereft of the kind of "specific allegations of reputational or monetary harm" necessary to establish a concrete injury in fact. *Spira v. Trans Union, LLC*, No. 21-CV-2367, 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022). Thus, Walsh lacks Article III standing, this Court lacks subject matter jurisdiction over this case, and this action must be dismissed under Rule 12(b)(1).[2]

## IV. Conclusion

For the foregoing reasons, the DOE's motion to dismiss the amended complaint is GRANTED. This case is dismissed for lack of subject matter jurisdiction without prejudice to refiling in state court if appropriate. *See Rosenberg*, 2023 WL 1866871, at *5.

[2] Because the Court grants the DOE's motion to dismiss for lack of standing under Rule 12(b)(1), the Court declines to reach the DOE's motion to dismiss for failure to state a claim under Rule 12(b)(6).

The Clerk of Court is directed to close the motions pending at Docket Numbers 19 and 33, to enter judgment of dismissal, and to close this case.

SO ORDERED.

Dated: November 23, 2026
New York, New York

J. PAUL OETKEN
United States District Judge